## RAILWAY COMPANIES WHOSE PROPERTY IS UNDER LEASE SUBJECT TO WILLIS LAW TAX.

Common Pleas Court of Cuyahoga County.

THE STATE OF OHIO v. THE CLEVELAND & PITTSBURG RAILROAD COMPANY.

Decided, February 1, 1913.

*Taxation—Ohio Railways Under Lease—Liable for Payment of Willis Law Franchise Fees—Tenant Company Not Agent of the Owning Company—Why Certain Classes of Corporations Are Exempt From this Tax—Meaning of the Phrase "Engaged in Business"—Sections 5485 et seq.*

A railroad company, incorporated in this state and owning a line of railway which is being operated by another company under a long lease, is not relieved by reason of such lease from payment of the annual franchise fees provided by the Willis law, where it continues to maintain its corporate organization, collect rents, pay dividends, and to issue stock and bonds from time to time for extensions, betterments and refunding purposes.

*Timothy Hogan,* Attorney-General, *C. D. Laylin* and *Robert M. Morgan,* for plaintiff.
*Sanders & Dempsey,* contra.

LAWRENCE, J.

This action has been brought by the state of Ohio, plaintiff, at the request of the Secretary of State, against the Cleveland & Pittsburg Railroad Company, defendant, to recover from said company a fee of one-tenth of one per cent. upon the outstanding capital stock of said company for the years 1902 to 1907, inclusive, under Section 1 of the act of the General Assembly entitled "An act to require corporations to file annual reports with the Secretary of State and to pay annual fees therefor," passed April 11, 1902 (95 O. L., 124), commonly known as the Willis law, and an act amendatory thereof approved April 25, 1904 (97 O. L., 381).

The defendant is a steam railroad corporation, incorporated in this state prior to the adoption of the Constitution of 1851, but it has become subject to the provisions of that Constitution by various acts done by it before the year 1901. Said corporation owns a line of railroad in this state, which was constructed by it and which it operated prior to December 1, 1871. On October 25, 1871, by a lease to take effect December 1, 1871, it leased to the Pennsylvania Railroad Company, for the term of 999 years, all of its railroad property, together with all rights, privileges and franchises connected with or relating to the said railroad or to the construction, maintenance, use or operation of the same, but not including the franchise to be a corporation or any other right, privilege or franchise which is or may be necessary to preserve its corporate existence or organization. During the years involved here the defendant operated no railroad having surrendered to the lessee possession of its railroad and equipment, and such lessee, or its assignee, the Pennsylvania Company, has since 1871 operated and possessed the same.

The defendant, however, has continued to maintain its corporate organization, collecting rent under said lease, issuing new stocks and bonds from time to time to pay for extensions, renewals, betterments and increased facilities of its railroad properties and for refunding purposes, holding stockholders' meetings, and paying dividends, all as provided in said lease.

For the years in question here, the Pennsylvania Company made reports to the Auditor of State of the gross earnings from the operation of the railroad so leased by the defendant under the act of the General Assembly originally passed March 19, 1896 (92 O. L., 79), known as the Cole law, and the subsequent amendments thereto.

The state of Ohio contends that the defendant company is liable to pay the franchise tax under the act known as the Willis law, as provided in Section 1 of said act, while the defendant claims that said section should be construed as applying only to corporations doing business in this state, and that the defendant was not engaged in business in that it was not operating any railroad. The defendant further contends that it falls

within the class of corporations specifically exempt under Section 7 of said act.

Many of the rules relating to the construction of statutes have been called to the attention of the court by counsel, but as these rules, for the most part at least, are such as are used only in case of ambiguity in statutes, it may be well, before resorting to them, to inquire whether there is any ambiguity in the language of the statute under consideration. *Hough* v. *Dayton Manufacturing Company,* 66 O. S., 427.

Section 1 of this statute is as follows:

"Every corporation organized under the laws of this state, for profit, shall make a report in writing to the secretary of state, annually, during the month of May, in such form as the secretary of state may prescribe, containing the following facts:

"1. The name of the corporation.

"2. The location of its principal office.

"3. The name of the president, secretary, treasurer and members of the board of directors, with post office address of each. ·

"4. The date of the annual election of officers of such corporation.

"5. The amount of authorized capital stock and the par value of each share.

"6. The amount of capital stock subscribed, the amount of capital stock issued and outstanding, and the amount of capital stock paid up.

"7. The nature and kind of business in which the company is engaged and its place or places of business.

"8. The change or changes, if any, in the above particulars made since the last annual report.

"Such report shall be signed and sworn to before an officer duly authorized to administer oaths, by the president, vice president, secretary, or general manager of the corporation, and forwarded to the secretary of state.

"Upon the filing of such report, the secretary of state shall charge and collect from such corporation a fee of one-tenth of one per cent. upon the subscribed or issued and outstanding capital stock of said corporation, and to be not less than ten dollars in any case."

It will be observed that in specification 7 of said section relating to the facts to be stated in such report, the company reporting is required to state the nature and kind of business in

which it is engaged, and its place or places of business; but it seems to me that no inference can be drawn from this that the tax is payable only by corporations engaged in business. If we look further it will be seen that a company, in its report, is required to state various other matters such as the location of its principal office, the names and addresses of its officers, and the date of the annual election of officers, which have nothing to do with the basis on which the amount of the fee is determined. Plainly these matters are for the purpose of giving information proper to be had by the Secretary of State, and they are not intended as limitations upon the express provision that every corporation organized under the laws of this state, for profit, shall make a report to the Secretary of State, and that upon the filing of such report the Secretary of State shall charge and collect from such corporation a fee of one-tenth of one per cent. upon its subscribed or issued and outstanding capital stock. If a corporation be engaged in no business, it would be sufficient compliance to so state in the report. In the present case, however, I think that the defendant is engaged in business to such extent as to enable it to state the nature and kind of business in which it is engaged, and its place or places of business. If we had a statute which, by its terms, imposed a tax only on companies engaged in carrying on business, possibly a different question might be presented.

The fact that under Section 2 of the statute, relating to foreign corporations, the amount of the fee is based upon the proportion of the authorized capital stock of the corporation represented by property owned and used and business transacted in Ohio, does not seem to be of weight in ascertaining the meaning of the provision in Section 1 respecting the fee to be paid by domestic corporations, it being apparent that two entirely distinct and different methods are provided in the respective cases, and it being also clear that the reference to the proportion of the authorized capital stock represented as stated is merely the method employed to determine the just amount to be imposed upon a foreign corporation for the privilege of exercising its franchises in this state.

It is true that in the case of *Southern Gum Company* v. *Laylin,* 66 O. S., 578, in which the Supreme Court held this act of April 11, 1902, to be constitutional, the 5th paragraph of the syllabus is as follows:

"A franchise tax may be imposed by the General Assembly upon corporations, both domestic and foreign, doing business in this state."

What the court meant by the use of this language is more clearly indicated in the opinion, on page 595, where it is said:

"A domestic corporation is given life and continued existence by the state, and this life and existence with their accompanying powers constitute the franchise, and this franchise being valuable and given by the state, the state may impose a franchise tax thereon to the amount of the value thus conferred and continued, the same as in taxation by assessment; the public first bestows a special benefit upon the property, and then takes back by way of assessment a part or all it has thus conferred (*Walsh* v. *Barron,* 61 O. S., 15). A foreign corporation can do business in this state only upon such terms and conditions as the state may impose, and therefore a franchise tax may be imposed upon a foreign corporation for the privilege of doing business in this state. It therefore follows that a franchise tax may be imposed on both domestic and foreign corporations alike."

Really what the court held in that case was, that the tax under the Willis law was a franchise tax, and not a tax upon property, and hence was not subject to the constitutional limitations respecting the taxation of property. It would be equally a franchise tax, whether assessed upon all domestic corporations or only upon those engaged in active business, and the court was not called upon to definitely distinguish between the several classes of corporations taxed. A fair consideration, both of the reason of the decision and of the entire language used, is convincing that it was not intended to restrict the application of Section 1 to such domestic corporations as were engaged in business.

In my opinion the language of Section 1 admits of no construction other than that it applies to every corporation organ-

ized under the laws of this state, for profit, whether it is actually engaged in business or not, unless such corporation falls within one of the classes of corporations excepted by virtue of Section 7 of said act.

Section 7 of the original act passed April 11, 1902 (95 O. L., 124), contains this language:

"Provided that electric light, gas, natural gas, water works, pipe line, street railroad, electric interurban railroad, steam railroad, messenger, union depot, express, freight line, sleeping car, telegraph, telephone and other corporations, required by law to file annual reports with the Auditor of State, and insurance, fraternal, beneficial, building and loan, bond investment, and other corporations required by law to file annual reports with the superintendent of insurance, shall not be subject to the provisions of the preceding sections of this act."

By the act of April 25, 1904 (97 O. L., 381), this section was amended by inserting the words "public service" before the word "corporation" where it first appears, and the comma following the word "corporations" is left out. I am unable to see, however, in what way this amendment changes the meaning of the original section. The insertion or the omission of this comma seems to be accidental, for in the two similar clauses in the original section it was inserted in one and omitted from the other. Indeed, the usage as to commas is so varied, that there is no reason why significance should be given either to the use or the omission of one in a clause like this.

In the interpretation of the language in Section 7, counsel on both sides invoke the grammatical rule by which, where there are two or more words or phrases in a clause, each capable of being an antecedent, relative and qualifying words, phrases and clauses following the same are to be applied to the last antecedent. Generally, this is a rule of statutory construction, unless an extension to and inclusion of other antecedents more remote are required by a consideration of the entire statute. An antecedent, however, is not necssarily a single word; it may be qualified by words preceding it, as well as by those which follow it. Here we have only one substantive preceding the clause, "required by law to file annual reports with the Auditor of

State,'' which is the word ''corporation''; but this substantive is modified by all of the adjective words preceding it. Plainly the words ''electric light, gas, natural gas, water works, pipe line, street railroad, electric interurban railroad, steam railroad, messenger, union depot, express, freight line, sleeping car, telegraph, telephone'' are adjectives and not nouns, and plainly, as it seems to me, they each qualify the word ''corporations'' just as much as does the word ''other.''

The suggestion has been made that if the General Assembly intended, by the first clause of this proviso, to exempt all corporations required to file reports with the Auditor of State and none others, it could easily have said so without enumerating any of them. This is true, but it is not the course which that body generally follows, as may be seen by opening a volume of the statutes, almost at random.

The reason why the General Assembly, under Section 7, exempted from the operation of the Willis law, certain public service corporations and not all of them, is apparent from an examination of the statutes which require reports to be filed with the Auditor of State or with the superintendent of insurance, as the casse may be. It will be found that those corporations which are thus required to file reports are subject to the payment of excise taxes or other taxes or charges, to which corporations generally are not subject. Being already subject to burdens other than taxes upon property, there seems to be good reason for exempting them from the Willis law, but no reason is apparent for extending such exemption to other corporations.

It is said, however, that at the time of the passage of the Willis law, union depot, telegraph and telephone companies were not required to pay excise taxes. This is literally true, but telegraph and telephone companies were required to pay taxes on their personal property assessed in a special manner, as a unit or going concern; and on April 15, 1902, four days after the passage of the Willis law, sub-sections 17 to 22, inclusive, of Section 2780, Revised Statutes, were amended by an act found in 95 O. L., 136, by which union depot, telephone and telegraph companies were included with other companies required to re-

port to the Auditor of State, and to pay an excise tax upon their gross receipts. The last named act was designated as house bill No. 55, and the Willis law was designated as house bill No. 57, indicating that they were introduced about the same time and were under consideration together. It is thus evident that the General Assembly, in Section 7 of the Willis law, had in contemplation the passage of the amendatory act which was actually passed four days later. I see no reason why the latter act may not be regarded as an act *in pari materia*, when we are considering the intention of the General Assembly. 36 Cyc., 1149 and 1151. *Jones v. Carr & Co.*, 16 O. S., 420 (428).

In the orginal act passed March 19, 1896 (92 O. L., 79), providing for an excise tax on railroad companies and certain other corporations as well as in the act amendatory thereof passed April 15, 1902, it is only such corporations named as are defined in the act and doing business in this state that are required to file reports with the Auditor of State and to pay such tax; and in both of said acts it is provided that a corporation when engaged in the business of operating a railroad; either wholly or partially within this state, whether on rights of way acquired and held exclusively by such company or otherwise, shall be deemed to be a railroad company.

As the defendant company was not engaged in operating any railroad, it was not required to file any report with the Auditor of State under any of the acts referred to other than the Willis law. The Pennsylvania Company, operating the railroad of the defendant by virtue of the lease which has been mentioned, was subject to the law imposing an excise tax, and it made reports to the Auditor of State, and paid the excise taxes charged to it during the years involved here. I can not see any ground on which it can be claimed that such payment by the Pennsylvania Company is to be deemed a payment on behalf of the defendant company, or that the payment of such excise taxes by the former operated in any way to relieve the latter from its obligation to pay the entirely different tax under the Willis law. The Pennsylvania Company was operating said railroad as the tenant under said lease and on its own behalf, and solely by reason of

such operation it was chargeable with the payment of said excise taxes. As such tenant it can not be regarded as the agent of the defendant company.

My conclusion is, that the defendant comes within the provisions of Section 1 of the Willis law, not because it was operating any railroad, but because it was a corporation organized under the laws of Ohio for profit, and that it is not included within the exceptions under Section 7 of said law.

The defendant not having complied with said law by filing annual reports with the Secretary of State and paying a fee of one-tenth of one per cent. upon the amount of its outstanding capital stock for the years in question, I find for the plaintiff in this action; and the plaintiff having agreed to waive all penalties on the amounts claimed, and there being no claim for interest in the petition, the amount of the recovery will be the amount of the fees chargeable for said several years. As I figure it, the total amount of such fee is $85,203.40, but before making the entry of judgment, I will ask counsel to verify this amount.